UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| HARRY D. PINCKNEY | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. CR409-026 |
| | ) | CV410-182 |
| UNITED STATES OF AMERICA | ) | |

## REPORT AND RECOMMENDATION

Harry D. Pinckney filed a 28 U.S.C. § 2255 motion alleging, *inter alia*, that his lawyer failed to file a direct appeal as Pinckney requested. The Court held an evidentiary hearing in which he and his appointed trial attorney, William Dow Bonds, testified.[1] CR409-026, doc. 22, 40. Based upon that testimony, Pinckney is entitled to § 2255 relief.

---

[1] This case thus follows a familiar pattern: A defendant takes no direct appeal, then files a § 2255 motion in this Court claiming that he told his lawyer he wanted to appeal, but his lawyer dropped the ball. *See, e.g., Varela-Andino v. United States*, 2007 WL 4224821 at * 1, 4 (S.D. Ga. Nov. 27, 2007) (unpublished) (recommending § 2255 relief "so that movant may pursue an out-of-time appeal" after an evidentiary hearing showed that he had asked his attorney to appeal his conviction but counsel failed to timely comply); *Telfair v. United States*, 2008 WL 4974821 at * 4 (S.D. Ga. Nov. 21, 2008) (unpublished) (same result). In response, the Court created a "Notice Of Counsel's Post-Conviction Obligations," to be furnished to counsel and client immediately after each conviction. *See Irick v. United States*, 2009 WL 2992562 at *

## I. BACKGROUND

Pinckney was indicted for and later pled guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Docs. 1, 13, 20. Bonds testified that he had met with Pinckney several times, including at jail, and just before sentencing they discussed not only potential arguments to raise at sentencing but also the merits of an appeal. He felt that Pinckney's objection to the probation office's Presentence Investigation Report (PSI) -- that his sentence should not be enhanced for a prior *state-court* misdemeanor marijuana possession offense[2] -- would not fly at sentencing or on appeal, and that was the only ground he could discern might exist, so Bonds told him that an appeal would not be worth taking.

At the § 2255 evidentiary hearing, Bonds testified that Pinckney never asked him to file an appeal. (Pinckney says he did, just after he was sentenced). Bonds admits, however, that he never directly asked

---

1 (S.D. Ga. Sep. 17, 2009). That Notice requires both attorney and client to consult about the defendant's appellate rights, then execute and file the Notice (memorializing that consultation and the defendant's decision). Unfortunately, that was not done here.

2 Pinckney's recommended sentence under the advisory guidelines was 84 to 105 months. PSI ¶ 47. The Court sentenced him to 75 months' imprisonment, below the guidelines range. Doc. 20.

2

Pinckney whether he wanted to appeal. He indicated that had Pinckney asked him to file a direct appeal, he would "probably" have done so, "but on the other hand," he insisted, "you can't file frivolous appeals before the Eleventh Circuit either." Bonds acknowledged that a defendant has an absolute right to an appeal, but he did not know what an "*Anders* brief" was.[3] The Court asked him: "how did you know, after sentence was pronounced, what your client really wanted to do, since you didn't consult with him? How did you know?" Bonds replied: "Well, I did not know what he wanted at that point without having consulted with him, but I guess I made the *assumption*, whether correct or incorrect, that, since we received the sentence below the guideline range, at least that was the starting point for the sentence being reasonable under the circumstances." (Emphasis added).[4]

In other words, Bonds simply assumed Pinckney did not want to appeal. He also conceded that the guideline range behind movant's sentence was based on the marijuana enhancement, so it likely would

---

[3] While lawyers are obligated to file a direct appeal if their client so directs, they may also file an *Anders* motion -- a pro forma brief coupled with a motion to withdraw -- if they believe the appeal to be meritless. *See, e.g., United States v. Olds*, 2010 WL 4674262 at *1 (11th Cir. Nov. 19, 2010) (citing *Anders v. California*, 386 U.S. 738 (1967)).

[4] This Court's § 2255 evidentiary hearing audio recording has not been transcribed.

have been lower if Pinckney had won on his enhancement argument on appeal.

Pinckney, meanwhile, insists that he told Bonds right after being sentenced, and while still in the courtroom, that he wanted to appeal, yet Bonds dropped dead on him ("he just told me that he would come talk to me [about filing a direct appeal]," yet never did). *See also* doc. 22 at 17 (his § 2255 motion recounting this sequence).

## II. ANALYSIS

The essence of Pinckney's claim is that Bonds provided ineffective assistance of counsel,[5] this cost him his right to a direct appeal, and thus he is entitled to a "do-over." Two sets of principles are applied here. First,

> [a] direct appeal of a federal conviction is a matter of right. *Rodriquez v. United States*, 395 U.S. 327, 329-30, 89 S. Ct. 1715, 23

---

[5] In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.* There is a special prejudice standard applied here, however: "In cases where counsel has failed to conduct a proper consultation, the defendant must demonstrate there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Stanton* v. *United States*, 2010 WL 3705964 at *1 (11th Cir. Sep. 23, 2010) (quotes and cite omitted).

4

L. Ed. 2d 340 (1969). "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).

*Stanton,* 2010 WL 3705964 at *1. So if Pinckney directed Bonds to file an appeal, it would have been *per se* ineffective of Bonds to fail to do so even if Bonds saw no non-frivolous grounds for appeal. Second, it is not enough if the client never says anything either way about an appeal. His lawyer must affirmatively inquire as to his client's intentions:

> In cases where the defendant has not instructed counsel to file an appeal, counsel nevertheless has a "constitutionally imposed duty to *consult* with the defendant about an appeal when ... [the] particular defendant reasonably demonstrated to counsel that he was interested in appealing." [*Roe*, 528 U.S.] at 480. The duty to consult "requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, and making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal." *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir.2007).

*Id.* (emphasis added). Hence, he must *ask*: "Do you want to appeal?"

Bonds therefore was required to consult with Pinckney about his appeal rights and file an appeal if Pinckney so directed -- even if Bonds believed that it would have been frivolous. His failure to uphold his duty to consult can, if the required prejudice is shown, warrant § 2255 relief. *Thompson,* summarized in *Stanton,* provides a useful comparison here:

5

> In *Thompson*, we addressed the issue of adequacy of consultation. 504 F.3d at 1206. Undisputed testimony in Thompson showed (1) Thompson expressed to counsel that he was unhappy with his sentence directly after the court imposed it; (2) counsel told Thompson he had a right to appeal, but noted he did not think an appeal would be worthwhile, without explaining the reasoning behind this position; (3) Thompson responded "fine;" and (4) the exchange lasted no more than five minutes. *Id.* at 1207. Citing *Roe*, we concluded the consultation was inadequate, stating "[s]imply asserting the view that an appeal would not be successful does not constitute 'consultation' in any meaningful sense." *Id.* We held that counsel made no effort "to discover Thompson's informed wishes regarding an appeal," and concluded evidence that Thompson was dissatisfied with his sentence and asked his attorney about appealing was sufficient to show the requisite prejudice. *Id.* at 1207-08.

*Stanton*, 2010 WL 3705964 at *1.

Thompson thus won § 2255 relief on appeal. And just like Thompson, Stanton reasonably demonstrated an interest in appealing. His lawyer admitted that Stanton asked him to appeal, and Stanton nodded his head when counsel told him there were no appealable issues. Too, counsel's merely stating "that there were no appealable issues without further explanation did not constitute adequate consultation." *Id.* (citing *Thompson*, 504 F.3d at 1206-07); *cf. Baughman v. United States*, 2008 WL 3861991 at * 3  (S.D. Ga. Aug. 18, 2008) ("[s]ince Baughman was fully advised of his appeal rights, and since he knew that [his attorney] ... thought that such an appeal would be futile and believed

that Baughman shared this view, [counsel] did not err in failing to file a notice of appeal when his client never requested that he do so."), *aff'd*, 319 F. App'x 866, 870 (11th Cir. 2009) (district court's finding that defendant did not instruct his defense counsel to file notice of appeal was not clearly erroneous, given that counsel testified that defendant did not respond to an offer to file notice of appeal and that defendant wavered in his testimony that he instructed counsel to appeal).

Stanton also demonstrated that "but for counsel's failure to perfect an appeal on his behalf, he would have appealed. Stanton expressed interest in his appeal, and requested counsel's help in reducing his sentence. Therefore, there is a reasonably probability Stanton would have exercised his right to appeal." *Id*; *see also Holloway v. United States*, 2009 WL 2340686 at * 3 (S.D. Ga. July 27, 2009) ("The Court concludes that Holloway has demonstrated a reasonable probability that he would have appealed had his retained guilty plea counsel . . . more thoroughly consulted with [him] regarding his desire to appeal."). And the fact that the district judge has notified the defendant that he has a right to appeal does not absolve counsel of his duty to consult. *Thompson*, 504 F.3d at 1208 n. 8.

Here, just as in *Thompson* and *Stanton*, Bonds at most simply informed Pinckney of his opinion of any appeal's viability. He likewise failed to nail down whether Pinckney wanted to appeal anyway. Thus, even though the Court credits Bonds's testimony that Pinckney never specifically asked Bonds to file an appeal (and rejects Pinckney's testimony to the contrary), Bonds nevertheless failed in his consultation duty. And, although the evidence is somewhat weak, the Court is satisfied that Pinckney has shown prejudice by demonstrating a reasonable probability that he would have appealed if Bonds had properly consulted with him about his appellate rights.[6]

Pinckney therefore is entitled to § 2255 relief. The Court should therefore **GRANT** his § 2255 motion and apply the corrective measures set forth in *Holloway*, 2009 WL 2340686 at * 4, as reflected in the

---

[6] Prior to sentencing, Pinckney wrote this Court complaining that Bonds had neglected him. Doc. 16. The Court timely responded and directed Bonds to meet with him, and he did. *Id.* Yet, Pinckney evinced no such vigor in seeking to appeal. At the evidentiary hearing he admitted that he could have but failed to mail a letter to Bonds (if not another letter to this Court) asserting his direct-appeal rights. By that point, he explained, "I was really frustrated about the whole situation, and really I just gave up on the case." And "when [Bonds] came [to see me] and I was sentenced the next day, it really messed me up, frustrated me." Still, it costs an indigent defendant virtually nothing to file a direct appeal, and so it seems likely that, since there was little for Pinckney to lose, he would have opted to exploit that option if fully consulted.

proposed Adoption Order accompanying this Report and Recommendation.

**SO REPORTED AND RECOMMENDED** this <u>2nd</u> day of December, 2010.

_____
**UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA**